John Mejia, Utah Bar No. 13965
Leah Farrell, Utah Bar No. 13696
American Civil Liberties Union of Utah Foundation, Inc.
335 North 300 West
Salt Lake City, Utah, 84103

Karra Porter, Utah Bar No. 5223
CHRISTENSEN & JENSEN, P.C.
15 West South Temple, Suite 800
Salt Lake City, Utah  84101
Telephone:  (801) 323-5000

Attorneys for Plaintiff

IN THE UNITED STATES DISTRICT COURT

CENTRAL DIVISION, STATE OF UTAH

| | |
|---|---|
| TIMOTHY REDMOND, NICK WATSON, GEORGE MONFORT, DANIEL LASSCHE, KRAIG CANFIELD, and all others similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>ALFRED BIGELOW, ROBERT POWELL, and SERGEANT ANDERSON,<br><br>Defendants. | **PLAINTIFFS' COMPLAINT FOR DAMAGES, AND FOR CLASS-WIDE DECLARATORY AND INJUNCTIVE RELIEF**<br><br>**(CLASS ACTION)**<br><br>Civil No. |

**INTRODUCTION**

The prisoners in the Olympus wing of the Utah State Prison in Draper, Utah all suffer from physical and mental health conditions.  On August 3, 2011, prisoners housed in this wing

1

were locked in their fully enclosed cells (no windows/no bars/no openings) while their cells were pumped with air contaminated with CS gas (commonly known as tear gas). Immediately upon being exposed to the gas, prisoners felt burning in their eyes, lungs, and skin. The prisoners began desperately trying to get the attention of prison officials by, among other things, kicking, screaming, and repeatedly pressing their emergency response buttons. However, no response was made to prisoners' emergency calls. Many of the prisoners thought they were going to die. Adding to the prisoners' distress, prison officials came into the Olympus wing wearing gas masks and at least one official laughed at the prisoners' inability to breathe.

After twenty to thirty minutes of being "gassed," some of the prisoners were released from their cells and taken to an outside courtyard. On information and belief, other prisoners were left in their cells to sit amidst the lingering gas. Some of those prisoners allowed access to clean air were called "sissies" for complaining. Defendants assured prison administrators that those affected would have access to medical treatment, but prisoners were told that they should only seek medical attention if it was an emergency and that prisoners would be responsible for paying for any medical care received. Additionally, prison officials threatened inmates with future "gassings" and told them that "this is what you get for misbehaving."

On information and belief, prison policy does not prohibit the use of tear gas canisters in the circumstances described herein, that is, to respond to misconduct by a single prisoner. Moreover, on information and belief, it is also currently the policy of the prison to use chemical agents on a smaller scale against individual prisoners. Moreover, Plaintiffs are unaware of any policy that requires prison officials in the Olympus wing to adequately respond to prisoners in

distress when chemical agents are used in the prison, whether it is the targeted individual or prisoners who are not specifically targeted but exposed to the agents nonetheless.

## JURISDICTION AND VENUE

1. This action arises under the Eighth Amendment to the United States Constitution, 42 U.S.C. § 1983, and Article 1, Section 9 of the Utah Constitution.

2. Jurisdiction exists pursuant to 28 U.S.C. §§ 1331, 1343(a)(3) and (4), and 1367(a).

3. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b), in that the Plaintiffs' claims all arose within the District.

## PLAINTIFFS

4. Named Plaintiff Timothy Redmond is an adult citizen and resident of the state of Utah. Plaintiff Redmond had been diagnosed with depression, panic anxiety disorder, and post-traumatic stress disorder stemming from a childhood incident. On August 3, 2011, Mr. Redmond was incarcerated in the Utah State Prison in the Olympus wing. However, Mr. Redmond was subsequently released.

5. Named Plaintiff Nick Watson is a prisoner at the Utah State Prison who was incarcerated in the Olympus wing on August 3, 2011. Mr. Watson has a history of depression and attempted suicide. He also suffers from anxiety that stems from an electrical fire incident that occurred at his residence in 2002.

6. Named Plaintiff George Monfort is a prisoner at the Utah State Prison who was incarcerated in the Olympus wing on August 3, 2011. Mr. Monfort has been diagnosed with paranoid schizophrenia and takes medication to treat his anxiety, depression, schizophrenia, and to help him sleep.

7.     Named Plaintiff Daniel Lassche is a prisoner at the Utah State Prison who was incarcerated in the Olympus wing on August 3, 2011. Mr. Lassche has kidney problems and high blood pressure and receives dialysis treatment.

8.     Named Plaintiff Kraig Canfield is a prisoner at the Utah State Prison who was incarcerated in the Olympus wing on August 3, 2011. Mr. Canfield has been diagnosed with, among other things, obsessive-compulsive disorder, anxiety disorder, and psychotic disorder.

## THE PLAINTIFF CLASS

9.     The named Plaintiffs bring this action on their own behalf and as representatives of the following two classes:

> 1) All prisoners currently incarcerated in the Olympus wing of the Utah State Prison (the "Injunctive Class"); and
>
> 2) All prisoners and former prisoners who were in their cells in the Olympus wing of the Utah State Prison on August 3, 2011, and were thereby exposed to noxious o-chlorobenzylidene malononitrile ("CS gas") (the "Damages Class").

10.    Class certification of the Injunctive Class is appropriate under F.R.Civ.P. 23(a) and (b)(2) because the Defendants have acted or refused to act on grounds that apply generally to the Injunctive Class so that final injunctive relief or corresponding declaratory relief is appropriate with respect to the class as a whole and:

> a.     The members of the Injunctive Class are so numerous that joinder of all persons is impracticable. Upon information and belief, there are at least 150 inmates in the Olympus wing.
>
> b.     There are questions of fact or law common to the class:

4

        (i)     Common questions of fact include the current policies, practices and customs regarding the deployment of chemical agents in the Olympus wing of the Utah State Prison, including whether it is policy, practice or custom to:

- refuse to answer emergency call buttons when tear gas is deployed;

- wait 20-30 minutes to allow affected prisoners to leave their cells;

- refrain from providing medical treatment after prisoners are exposed to tear gas; and

- discourage prisoners affected by chemical agents from filing grievances.

        (ii)    Common questions of law include: whether Defendants' current policies, practices and customs regarding the deployment of chemical agents in the Olympus wing of the Utah State Prison comply with the federal and Utah constitutions, particularly given the mental and physical health conditions of the prisoners housed there; whether those policies, practices and customs create a risk of future harm to the Injunctive Class; and related issues.

    c.    The representative Plaintiffs' claim is typical of the claims of the class; in fact, the claims of all of the Injunctive Class members are identical.

    d.    The representative Plaintiffs will fairly and adequately represent the interests of the Injunctive Class. The named Plaintiffs have manifested willingness and persistence to assert claims on their own behalf and that of their fellow prisoners, and have retained counsel experienced in class action and other complex litigation.

11.    Class certification of the Damages Class is appropriate under F.R.Civ.P. 23(a) and (b)(3) because questions of law or fact common to the Damages Class predominate over any questions

affecting only individual members, class action is superior to other available methods for fairly and efficiently adjudicating the controversy; and:

      a.     The members of the Damages Class are so numerous that joinder of all persons is impracticable. Upon information and belief, the total number of class members is approximately 150 men.

      b.     There are questions of fact or law common to the Damages Class that predominate over the only factual issue that may vary among members, *i.e.*, damages:

           (i)     Common predominating questions of fact include: How and why the Olympus wing prisoners were exposed to CS gas; the circumstances under which CS gas was deployed against a prisoner in the wing; why there was no response to emergency calls from prisoners during the incident or other action to explain what was happening; whether Defendant Powell threatened or otherwise prevented prisoners from obtaining prompt medical attention following exposure to the CS gas; and other related issues.

           (ii)    Common predominating questions of law include: What standard of review applies to the defendants' alleged conduct; whether the defendants' conduct rose to the level of a constitutional deprivation; and related issues.

      c.     The representative Plaintiffs' claim is typical of the claims of the Damages Class; in fact, the liability claim is identical.

      d.     The representative Plaintiffs will fairly and adequately represent the interests of the Damages Class. The named Plaintiffs have manifested willingness and

persistence to assert claims on their own behalf and that of their fellow prisoners, and have retained counsel experienced in class action and other complex litigation.

## DEFENDANTS

12. Defendant Alfred Bigelow is warden of the Utah State Prison in Draper, Utah. On information and belief, Defendant Bigelow is responsible for creation and oversight of policies, practices and customs regarding the deployment of chemical agents in the Olympus wing of the Utah State Prison. Mr. Bigelow is sued in his official capacity for declaratory and injunctive relief only.

13. Defendant Robert Powell is, and was at all relevant times, a resident of the State of Utah, and was employed as a Captain at the Utah State Prison. He was the head supervisor of all of the correctional staff on duty during the incident that gives rise to this action. Captain Powell is sued in his personal capacity.

14. Defendant Anderson (first name unknown to Plaintiffs) is, and was at all relevant times, a resident of the State of Utah. Said defendant was employed as a guard at the Utah State Prison on August 3, 2011. Said defendant is sued in his personal capacity.

## EXHAUSTION OF REMEDIES / INAPPLICABILITY OF PRISONER LITIGATION REFORM ACT

15. Plaintiff Redmond is not presently incarcerated. Consequently, this litigation is not subject to the provisions of the Prisoner Litigation Reform Act, including requirements of exhaustion of remedies. *See Norton v. City of Marietta*, 432 F.3d 1145, 1150 (10th Cir. 2005).

16.     In any event, any requirement of exhaustion of remedies is satisfied by a named Plaintiff's exhaustion of such remedies. Named Plaintiff Nicholas Watson exhausted his remedies as follows:

   a.   Mr. Watson submitted a timely Inmate Grievance Form on August 8, 2011. The grievance was denied by a member of Prison staff on August 17, 2011, which denial was affirmed by Defendant Powell on August 25, 2011.

   b.   Mr. Watson submitted a Level 2 appeal on August 30, 2011. The Level 2 appeal was denied by Defendant Bigelow on September 22, 2011.

   c.   Mr. Watson filed a Level 3 appeal on October 3, 2011. The Level 3 appeal was denied, and Mr. Watson's grievance was dismissed by the Utah Department of Corrections on October 26, 2011. No further administrative review was available.

## STATEMENT OF FACTS

The following allegations are pled in their totality and in the alternative.

17.     On August 3, 2011, the Plaintiffs and all other members of the Class were incarcerated in the Olympus wing of the Utah State Prison.

18.     The Olympus wing houses prisoners with physical and/or mental health conditions, including age-related infirmity.

19.     Cells in the Olympus wing are fully enclosed; they do not have bars, windows, or other openings. Air is piped into cells through a ventilation system.

20.     At approximately 4:00 p.m., the Plaintiffs and all other members of the Class were secured in their cells.

21.     Suddenly and without warning, each of the cells became infused with CS gas (commonly referred to as "tear gas").

22.     CS gas is composed of o-chlorobenzylidene malononitrile. The compound is a white solid powder mixed with a dispersal agent, like methylene chloride, which carries the particles through the air.

23.     Defendants were each aware of the risks and effects of CS gas.  In fact, guards at the Prison do not deploy CS gas unless they are themselves wearing masks.

24.     Defendants knew that, if CS gas entered the ventilation system in the Olympus wing while prisoners were secured in their cells, the prisoners would experience pain, difficulty breathing, burning sensations in their lungs, eye, throat and skin irritation, panic, and other harm.

25.     Prisoners began screaming, yelling, kicking their doors, and otherwise desperately attempting to get the attention of Prison personnel.  Many prisoners believed that the wing was on fire, and/or that they were going to die.

26.     Many prisoners pressed their emergency communication buttons, but received no response.  Upon information and belief, the jail personnel who normally would have responded to prisoners' emergency calls were instructed not to respond to such calls while the CS gas was permeating the Olympus wing.  Consequently, inmates had no idea what was happening to them.

27.     Approximately 15 minutes after the cells became infused with CS gas, the air flow of the Olympus wing's ventilation system was reversed for about one minute when a sergeant entered the wing.  After the sergeant's departure from the wing, tainted air began flowing back into the cells again.

28.     While the prisoners were suffering the effects of the CS gas, Defendant Anderson entered the wing and began laughing at the prisoners' inability to breathe.

29.     After 20-30 minutes of the CS gas exposure, the prisoners in B and C blocks of Olympus were taken outside to a courtyard. Upon information and belief, prisoners in A and D blocks were not removed from their cells.

30.     In the courtyard, Captain Powell discouraged the reporting of medical symptoms by prisoners, asking some of the assembled prisoners, "Any of you sissies need medical help?" Captain Powell indicated to the prisoners that only those who felt it was an emergency should see a med tech.

31.     Defendant Powell was aware that, unless prisoners are permitted to shower and otherwise remove CS gas from their skin, surrounding air, and belongings, the CS gas would continue to burn and irritate inmate's skin and lungs.

32.     One of the assembled prisoners told Captain Powell that he was experiencing lung problems, and another reported having a panic attack.

33.     Captain Powell and another prison official told some of the assembled prisoners that counselors would be provided to prisoners to address the incident, but no counselors were provided.

34.     Even though the prisoners' need for medical attention was caused entirely by the conduct of Defendants and the prisoners were wholly without fault with respect thereto, Captain Powell refused to waive the prohibitive cost of seeking medical care.

35. Those Prisoners in Olympus wing who are capable of employment earn only 40 cents per hour. At the time of the incident, the Prison was charging $1 to fill out a request to see a prison doctor, and another $4 to see the doctor.

36. The Prison phones in the Olympus wing were shut down for approximately two days after the gassing. Upon information and belief, this action was taken to conceal the gassing incident from the public, or as an implicit threat against prisoners if they discussed the incident with others.

37. The Named Plaintiffs learned after the incident that several members of the Special Operations Unit personnel had deployed a CS gas "bomb" against a single, unarmed prisoner who was refusing to return to his cell from the courtyard.

38. Defendant Powell misleadingly reported to Prison administration that "a medical representative was called in to offer medical treatment to any affected inmates," and that "[a]ll inmates affected by the gas were seen by medical staff." In reality, a registered nurse told prisoners that the effects of the gas would simply go away in time and asked prisoners if they wanted to go to the infirmary. Only a few prisoners went to the infirmary.

39. Defendant Powell also falsely reported to Prison administration that only "small" amounts of CS gas was drawn into the air system, that the Prisoners' exposure to the CS gas was "minimal," and that the prisoners had been "immediately" evacuated once Prison officials learned of the exposure. These statements were untrue and, upon information and belief, were made as part of an effort to cover up or mischaracterize the incident.

40. Defendants have not apologized or taken steps to reassure prisoners that similar incidents will not occur again. To the contrary, guards have utilized the incident to threaten prisoners. For

example, Officer Sergeant Forsath subsequently threatened to "gas again." Other guards have characterized the incident as a "training mission."

41.     On information and belief, the policies, procedures, and customs of the Utah State Prison allow the conduct described herein with respect to the deployment of chemical agents in the Olympus wing and encourage the nature of the response to the prisoners affected by the gas. Accordingly, it is substantially likely that this incident will not be an isolated event in the Olympus wing.

## FIRST CLAIM FOR RELIEF

### (Eighth Amendment, all Defendants)

42.     All other paragraphs of this Complaint are re-alleged and incorporated as though fully set forth herein.

43.     Based on the facts set forth above, the named Plaintiffs and the classes they represent assert that the Defendants violated their rights under the Eighth Amendment by creating an unconstitutional condition of confinement.

44.     The conditions surrounding Plaintiffs' confinement posed a substantial risk of serious harm to Plaintiffs' health or safety.

45.     Defendants acted with deliberate indifference to the risk of harm to Plaintiffs because they were aware that exposure to CS gas is harmful yet did not take steps to alleviate the risk to Plaintiffs by, for example, responding to Plaintiffs' emergency calls, timely removing Plaintiffs from their cells; providing a mechanism by which Plaintiffs could remove the CS agent from their skin, clothing, and belongings; providing Plaintiffs access to medical treatment and counseling.

46. Plaintiffs suffered physical and emotional injury from the deployment of CS gas in the Olympus wing. The physical injuries stem from the chemical compounds in the CS gas, and include intense and painful burning in the eyes, nose, throat and skin, and lung congestion, which made it difficult to breathe. Prisoners also suffered emotional damages, including increased and continuing anxiety, worsening of existing conditions such as PTSD, and so on.

47. An injunction is necessary to prevent future recurrences of these violations, because they stemmed from the policies, practices and/or customs of the Utah State Prison in Draper, Utah.

## SECOND CLAIM FOR RELIEF

**(Eighth Amendment; Defendant Powell)**

48. All other paragraphs of this Complaint are re-alleged and incorporated as though fully set forth herein.

49. Based on the facts set forth above, the named Plaintiffs and the Damages Class they represent assert that Defendant Powell violated their rights under the Eighth Amendment by failing to provide medical attention needed as a result of the Defendants' own conduct, and threatening or otherwise improperly taking steps to prevent prisoners from seeking medical attention.

## THIRD CLAIM FOR RELIEF

**(Eighth Amendment; all Defendants)**

50. All other paragraphs of this Complaint are re-alleged and incorporated as though fully set forth herein.

51. The Defendants' deployment of CS gas posed a substantial risk of serious harm to Plaintiffs' health or safety.

52. Defendants' deployment of CS gas was not a good faith effort to restore discipline and order but was used sadistically for the very purpose of causing harm as demonstrated by, among other things, that: a. Defendants acted with force greater than necessary to quell the behavior of one unarmed prisoner; b. Defendants failed to institute a policy to minimize the effects of CS gas to inmate bystanders; c. Defendants used force indiscriminately when they had knowledge that CS gas had infiltrated the ventilation system and affected inmates that were locked in their cells and posed no threat and yet left these prisoners in their cells for 20 to 30 minutes.

53. An injunction is necessary to prevent Defendants from taking these actions again because, on information and belief, they were taken pursuant to the policies, practices, and/or customs of the Utah State Prison at Draper, Utah.

## FOURTH CLAIM FOR RELIEF

**(Article I, § 9 of the Utah Constitution; all Defendants)**

54. All other paragraphs of this Complaint are re-alleged and incorporated as though fully set forth herein.

55. The acts complained of by the Plaintiffs herein presented an obvious and known substantial risk of serious injury for which there was no reasonable justification at the time.

56. The acts complained of constituted a flagrant violation of the plaintiffs' rights under Article I, § 9 of the Utah Constitution to be free from cruel and unusual punishment and not to be treated with unnecessary rigor.

57. Existing remedies do not redress the plaintiff's injuries, because there are no comparable remedies under state common or statutory law, and because the protections of Article I, § 9 are broader than those of the United States Constitution.

58. Equitable relief alone is wholly inadequate to remedy the alleged violations, which include personal and medical injury.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully prays for the following relief:

1. Certify the proposed Injunctive and Damages classes;

2. Declare that the events described above violated the United States Constitution and the Utah Constitution;

3. Enter an injunction directing that Defendants adopt and comply with written policies regarding the deployment of chemical agents in the Olympus wing of the Utah State Prison at Draper Utah;

4. Enter an order enjoining Defendants from refusing to respond to emergency calls;

5. Award damages to each member of the Damages Class;

6. Grant an award of attorneys' fees and expenses;

7. Grant such other equitable and other relief as the Court deems just and proper.

DATED THIS 3rd day of June, 2013.

ACLU of Utah

/s/ John Mejia
John Mejia
Leah Farrell

CHRISTENSEN & JENSEN, P.C.
Karra J. Porter